UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00038-GNS-HBB


JERRY A. BELLAR                                                              PLAINTIFF


v.


CITY OF AUBURN, KENTUCKY and                                        DEFENDANTS
MICHAEL A. HUGHES


## MEMORANDUM OPINION & ORDER

This matter is before the Court upon Defendants' Motion for Summary Judgment (DN 35), which is ripe for adjudication.  For the reasons stated below, the motion is **DENIED**.

## I.      BACKGROUND

From September 29, 2004, to August 8, 2013, the City of Auburn ("City") employed Plaintiff Jerry Bellar ("Bellar") as its park attendant.  (Mem. Op. & Order 5, DN 27; Bellar Dep. 17:5-8, 50:5-7, Feb. 24, 2016, DN 36-2).  In this role, Bellar's primary responsibility was maintaining the upkeep of the City's park and doing "whatever needed to be done."  (Bellar Dep. 17:14-21:24).  The City required Bellar to be on duty at the park from 8:00 AM until 4:30 PM, Monday through Friday.  (Bellar Dep. 62-63).  Bellar took a 30-minute lunch break every day.  (Bellar Dep. 37:8-38:13).  Excluding his lunch break, Bellar testified that he worked 8 hours a day during a typical work week.  (Bellar Dep. 37:8-38:15).

Additionally, Bellar testified that, every Saturday and Sunday while employed as park attendant, he did routine maintenance at the park, such as checking its condition, picking up trash, and cleaning bathrooms. (Bellar Dep. 26:9-27:3). Bellar's weekend work took at least an hour a day, sometimes more. (Bellar Dep. 27:4-9). For example, special events would sometimes require him to work all day and into the night on Saturdays and Sundays. (Bellar Dep. 28:22-29:7). Bellar testified that he estimates to have worked, on average, approximately six additional hours per week on top of his typical forty-hour work week. (Bellar Dep. 29:24-30:12).

Throughout his tenure as park attendant, Bellar took paid time off for vacation, holidays, and sickness, which he always noted on his timecards. (Bellar Dep. 37:12-19, 41:1-42:18, 44:24-45:1). After compiling Bellar's timecards, Defendants found that, from March 23, 2012, until his termination (a total of 72 weeks), Bellar had forty-one weeks with zero hours taken off, nine weeks with five or fewer hours off, and twenty-two weeks with eight or more hours off. (Paid Time off Chart, DN 35-2). Furthermore, Bellar admitted that on some weekdays, especially in the winter, things were slow during his regular hours, so he would watch television, piddle with stuff in the shop, or converse with other employees while waiting for something to come up. (Bellar Dep. 24:4-25:4, 28:3-22).

The City's mayor was responsible for overseeing Bellar's work as park attendant. (Hughes Dep. 17:24-18:17, July 19, 2016, DN 36-3). Dewey Roche ("Roche") was the mayor who hired Bellar in 2004, and Roche held that office until January 2013, at which point Defendant Michael Hughes ("Hughes") became mayor. (Bellar Dep. 10:1-4, 17:5-8, 37:6-7; Hughes Dep. 12:20-22). Bellar was responsible for completing his timecards. (Bellar Dep. 41:23-24). When Bellar started in 2004, Roche told Bellar he was on salary and instructed him

to write down 8 hours worked for each weekday, unless he was sick or took vacation. (Bellar Dep. 25:15-23, 36:24-37:19).   Moreover, Roche told Bellar not to record any weekend hours; thus, Bellar never included overtime on his timecards.  (Bellar Dep. 25:15-25, 33:9-12).   Bellar maintained this practice throughout his employment as park attendant.  (Bellar Dep. 37:8-38:18).

Bellar filed this action alleging claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-209, and the Kentucky Wages and Hours Act ("KWHA"), KRS 337.010-.994.  Specifically, he asserts that FLSA Sections 207(a) and 216(b) and KRS 337.285 and 337.320 entitle him to overtime compensation.  (Am. Compl. ¶¶ 37-54).   Based on his timecards and estimate of additional time worked, Bellar claims to have worked approximately 246 unpaid overtime hours in the three years before filing this action and 91.5 hours in the two years before.  (Pl.'s Opp'n Defs.' Mot. Summ. J. 3, DN 36-1 [hereinafter Pl.'s Opp'n]).

## II.      JURISDICTION

The Court has federal question jurisdiction over Bellar's FLSA claims.  *See* 28 U.S.C. § 1331.   Additionally, pursuant to 28 U.S.C. § 1367, the Court has exercised supplemental jurisdiction over his KWHA claims.  (*See* Mem. Op. & Order 2).

## III.      STANDARD

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "An issue of fact is 'genuine' if a reasonable person could return a verdict for the non-moving party."  *Gass v. Marriot Hotel Servs.*, 558 F.3d 419, 428 (6th Cir 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When ruling on a summary judgment motion, courts must make all reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 251.   Moreover, "at the summary

judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249. "[C]redibility judgments and weighing of the evidence are prohibited."  *Moran v. Al Bastic LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (internal quotation marks omitted) (quoting *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010)).

## IV.   <u>DISCUSSION</u>

The FLSA requires that employees be paid "at a rate not less than one and one-half times the regular rate" for all hours worked above forty hours per week.  29 U.S.C. § 207(a)(1).  "To prevail in an FLSA overtime suit, a plaintiff must prove, by a preponderance of the evidence, that he 'performed work for which he was not properly compensated.'"  *Moran*, 788 F.3d at 205 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49 § 4(a), 61 Stat. 86-87 (codified as 29 U.S.C. 254(a)), *as recognized in Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 516-17 (2014)).  According to the Supreme Court "[t]he remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee."  *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Anderson*, 328 U.S. at 687).

Defendants argue that they are entitled to summary judgment because the "record is entirely devoid of evidence, other than Bellar's own speculative testimony, that Bellar ever worked even a single hour of overtime during the course of his employment."  (Defs.' Mem. Supp. Mot. Summ. J 2, DN 35-1 [hereinafter Defs.' Mem.]).  Moreover, Defendants explain that Bellar's timecards, which he prepared, contradict his claim that he worked overtime hours. (Defs.' Mem. 10).

Defendants' arguments ignore recent Sixth Circuit precedent.  In *Moran*, the plaintiff testified that he worked an average of sixty-five to sixty-eight hours per week for the duration of his employment.  *Moran*, 788 F.3d at 202-03.  He explained that his employer required him to work every weekday from 7:30 AM until around 6:30 or 7:00 PM, but somedays he stayed until 8:00 PM.  *Id.* at 203.  The plaintiff also testified that he worked on Saturdays from 7:30 AM until around 4:30 or 5:00 PM and that he worked maybe six Sundays while employed by the defendants.  *Id.*  The defendants denied the plaintiff's allegations and claimed he never worked more than thirty hours per week.  *Id.*  Moreover, the defendants forwarded timecards and paystubs reflecting that the plaintiff worked only thirty hours per week.  *Id.*  The district court granted summary judgment for the defendant's on the plaintiff's FLSA claim.  *Id.* at 204.

The Sixth Circuit overruled the district court and held that the plaintiff's uncorroborated testimony, which described his typical work schedule with "some specificity," was enough to defeat summary judgment despite the existence of timecards.  *Id.* at 205-06.  In so holding, it noted that "while Plaintiff's testimony may lack precision, we do not require employees to recall their schedules with perfect accuracy in order to survive a motion for summary judgment."  *Id.* at 205.  It further explained that timecards "do not amount to objective incontrovertible evidence of Plaintiff's hours worked . . . [,]" that the plaintiff denied the validity of the timecards, and that the plaintiff contended that the defendants sanctioned his overtime work.  *Id.*  Importantly, according to the court, "[w]hether [plaintiff's] testimony is credible is a separate consideration that is inappropriate to resolve at the summary judgment stage."  *Id.*

As  in *Moran*, Bellar's testimony creates a genuine issue of material fact as to whether he worked overtime.  In his deposition, Bellar described his typical work schedule with "some specificity."  *See id.* at 205-06.  He testified that he worked 8:00 AM to 4:30 PM on weekdays,

5

with a 30-minute break for lunch.  He also testified that he worked every weekend for at least one hour a day, sometimes more, which is no less specific than the *Moran* plaintiff's testimony. Bellar's timecards are not dispositive; similar to *Moran*, Bellar disputes the accuracy of those time cards because Roche instructed him not to record his weekend time.

Defendants' argument that summary judgment is appropriate because they were unaware Bellar was working overtime is unpersuasive.  Under the FLSA, work time includes all hours that the employer "suffer[s] or permit[s] [the employee] to work," even if not requested, so long as the employer knows or has reason to believe the employee is working.  29 C.F.R. §§ 785.11-12.  As the Sixth Circuit has recognized, "[a]t the end of the day, an employee must show that the employer knew or should have known that he was working overtime . . . ."  *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) (quoting *Wood v. Mid-America Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. 2006)).  Nevertheless, "it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them."  29 C.F.R. § 785.13.

Bellar's testimony also creates a genuine issue of material fact as to whether Defendants knew or should have known that he was working on the weekends.  Roche, who was mayor for a majority of Bellar's employment, knew Bellar was working on the weekends because he instructed Bellar not to record that time.  Hughes, who was mayor for a little over half a year of Bellar's employment, testified that he remembers two occasions on which Bellar worked Saturday or Sunday, but claims that Bellar "dropped out a day during the week" both times. (Hughes Dep. 95:2-14).  However, Hughes testified that the park was generally in good condition on weekends and that he never really received complaints about excess trash or debris.

6

(Hughes Dep. 96:3-97-9).  He also testified that weekends are the most popular park days. (Hughes Dep. 36:23-25).  In turn, because Bellar was the person responsible for cleaning the park, it could be reasonably inferred that Hughes should have known Bellar was doing some work on the weekends.

Defendants also argue that Bellar's overtime claims somehow fail because he took time off for holidays, vacations, and illnesses.  Defendants are correct that employers are generally not required to include paid time off in determining how many hours an employee worked during a week.  *See Aiken v. City of Memphis*, 190 F.3d 753, 760 (6th Cir. 1999); *see also* H. Mark Adams et al., *Time off From Work: Legal Rights and Obligations*, 16 The Complete Law. 44, 48 (1999) (providing example).  This comports with the Supreme Courts definition of "work," which means "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944). Suffice it to say employees do not typically take time off for holidays, vacations, or illnesses primarily for the benefit of the employer and his business.  *See Aiken*, 190 F.3d at 760.  That being said, Bellar is not including time off in his estimation of total overtime hours worked.  (*See* Pl.'s Opp'n 3).  To the extent Defendants ask the Court to find that Bellar's time off in some weeks offsets his overtime in other weeks, the Court declines to do so.  Defendants cite no authority supporting this proposition.  Indeed, it has been held that "work weeks may not be averaged to avoid the obligation to pay overtime compensation."  *Luther v. Z. Wilson, Inc.*, 528 F. Supp. 1166, 1174 (S.D. Ohio 1981); *see also Travis v. Ray*, 41 F. Supp. 6, 9 (W.D. Ky. 1941).

Defendants also argue that Bellar's weekend hours should be offset by periods where he was watching television, piddling with stuff in the shop, or conversing with other employees

during his regular work hours.  Summary judgment is inappropriate regardless of whether these activities qualify as "work."  Bellar testified that these periods of down time were not weekly occurrences.  The fact that, at times, Bellar may have been watching television while waiting for something to come up during his regular work hours is not dispositive—Bellar has a claim if he worked one additional hour during the forty-one weeks in which he took no time off.  Overall, in light of *Moran*, and drawing all reasonable inferences in Bellar's favor, genuine issues of material fact remain regarding whether Bellar worked overtime and whether Defendants' knew about it.  The credibility of Bellar's testimony is a question for the jury.  *See Moran*, 788 F.3d at 205.

Last, the Court must consider Defendants' argument that the FLSA's two-year statute of limitations applies.  Under the FLSA, the statute of limitations is two years for ordinary violations and three years for willful violations.  29 U.S.C. § 255(a).  According to the Supreme Court, a FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  The Court is not inclined to rule on the willfulness of Defendants' conduct at the summary judgment stage.  *Basset v. Tenn. Valley. Auth.*, No. 5:09-CV-00039, 2013 U.S. Dist. LEXIS 83203, at *3 (W.D. Ky. 2013) ("The 'willfulness' of any FLSA violation . . . is a factual determination to be made at trial.").  Furthermore, Defendants are incorrect in contending that there is no evidence of willfulness.  For example, Bellar testified that Roche told him he was a salaried employee and not to record hours worked on the weekend.  As a result, a reasonable jury could conclude that Defendants' conduct amounted to a willful violation.

## V.   <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion for Summary Judgment (DN 35) is

**DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**

January 13, 2017

cc:     counsel of record